**UNITED STATES of America, Appellee,**

v.

**Keith WILLIAMS, Appellant.**

**No. 93–1879.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1993.

Decided Dec. 6, 1993.

Gregory G. Fenlen, St. Louis, MO, argued, for appellant.

Mitchell Stevens, Asst. U.S. Atty., St. Louis, MO, argued, for appellee.

Before McMILLIAN, Circuit Judge, and HENLEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Keith Williams appeals from a final judgment entered in the United States District Court[1] for the Eastern District of Missouri, after he pleaded guilty to one count of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1). The district court sentenced Williams under the United States Sentencing Guidelines to 62 months imprisonment, four years supervised release and a special assessment of $50.00. For reversal, Williams argues the district court erred in (1) denying his motion to suppress physical evidence because there was insufficient probable cause to justify the issuance of the search warrant, and the information underlying the issuance of the warrant was stale; (2) denying his motion to suppress physical evidence because there was an unreasonable delay in execution of the warrant; and (3) granting a two-point

---

**1.** The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

increase for possession of a firearm during the commission of the offense. For the reasons discussed below, we affirm the judgment of the district court.

## I. BACKGROUND

In October 1992, Officer Scott Tarpley of the St. Louis County, Missouri, Police Department was conducting an investigation of appellant Keith Williams on the basis of information obtained from a confidential informant that Williams was capable of dealing in multi-kilo quantities of cocaine. The informant had known Williams in the past and knew that, at that time, Williams had been a drug dealer. The informant told Officer Tarpley that Williams lived at 7748 Chalmette, Hazelwood, Missouri, and that the apartment was listed in the name of Ritta. Officer Tarpley investigated and determined that the utilities at 7748 Chalmette were listed in the name of Ritta Miller.

On October 22, 1992, the informant contacted Officer Tarpley and informed him that he had been inside Williams' apartment that day and had seen a kilogram of cocaine, in its original packaging from Colombia, and $25,-000.00 in currency inside the apartment. The informant also told Officer Tarpley that Williams kept money in a safe which the informant had seen in both the living room and upstairs bedroom of the apartment on Chalmette, and that Williams had in the past possessed a gun. Subsequent to receiving this information, Officer Tarpley prepared an application and affidavit setting forth the information described above. The affidavit also stated that the informant had provided reliable information in the past, which led to the seizure of quantities of cocaine, marijuana and currency. The affidavit also described Officer Tarpley's experience in narcotics investigations. Officer Tarpley sought and received a warrant from a state court judge to search the Chalmette apartment for cocaine, cash, ledgers and notes, and other drug paraphernalia. The warrant directed that it be executed within ten days after its issuance and authorized a search in the day or night.

After obtaining the search warrant, Officer Tarpley met with the informant and request-

ed that he call the Chalmette residence to determine whether the cocaine remained on the premises. The informant called and discovered that the cocaine was no longer on the premises, but had been already distributed. The informant was told that Williams would be receiving a new shipment of cocaine within a week. In light of these developments, Officer Tarpley did not execute the search warrant on October 22, 1992.

On October 29, 1992, at approximately 11:00 p.m., Officer Tarpley and other officers were conducting surveillance of the Chalmette apartment. They witnessed Paula Edwards, Williams' girlfriend, open the apartment door, look up and down the street, and then close the door. Shortly thereafter, Edwards came out of the apartment carrying a portable telephone. She got into her car and drove through the apartment complex, driving into and out of each, separate parking area in the complex. Edwards then returned to the apartment. A short time later, Williams and another person arrived in a van. Both climbed out of the van and entered the apartment. The second party returned to the van shortly thereafter and left the vicinity.

Officer Tarpley then contacted the informant and requested that he phone Williams and inquire as to whether Williams had received another shipment of cocaine. The informant contacted Officer Tarpley a short time later and informed him that Williams said he had received cocaine, and the informant could come to get some that night or the following morning.

At approximately 1:15 a.m., on October 30, 1992, eight days after issuance of the search warrant, Officer Tarpley and his fellow officers knocked on the door of 7748 Chalmette and twice announced that they were police officers with a search warrant. Upon receiving no response, they knocked down the door. Inside the apartment, Williams was seated at a kitchen table. On the table was a glass mixing bowl containing approximately one kilogram of cocaine, a scale, and several plastic bags containing cocaine. These items were seized and Williams was placed under arrest. After informing Williams of his constitutional rights, Officer Tarpley asked

Williams if there were any guns in the apartment. Williams replied that a firearm was located in a black briefcase on the second floor of the apartment. The officers found a black briefcase containing a loaded nine-millimeter semi-automatic firearm and $2,500.00 in currency on the second-floor. While executing the search warrant, the officers also found airline tickets and cash receipts.

Williams was charged with one count of possession with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1). Williams filed a motion to suppress the cocaine and other evidence discovered in the apartment. Williams contended that there was insufficient probable cause to justify the issuance of the search warrant, and the information underlying the issuance of the warrant was stale. Williams also argued that the eight-day delay between issuance and execution of the warrant tainted the search. The magistrate judge[2] recommended that Williams' suppression motion be denied, and the district court adopted this recommendation.

On January 8, 1993, Williams entered a conditional plea of guilty pursuant to Fed. R.Crim.P. 11(a)(2), specifically reserving the right to appeal the adverse suppression ruling. The district court sentenced Williams to 62 months imprisonment after granting a two-point increase for possession of a firearm during the commission of the offense pursuant to § 2D1.1(b)(1) of the United States Sentencing Guidelines (U.S.S.G. or guideline). Williams also received a sentence of four years supervised release and a special assessment of $50.00. This appeal followed.

## II. DISCUSSION

### A. Williams' Motion To Suppress Evidence Seized From His Home

Williams challenges the admission into evidence of several items seized by the officers from the Chalmette apartment. Williams claims that (1) there was insufficient probable cause to justify the issuance of the search warrant, and the information underlying the issuance of the warrant was too stale to furnish probable cause; and (2) there was an unreasonable delay in execution of the warrant.

### 1. Probable Cause To Issue The Warrant

Regarding Williams' first challenge, he argues that the affidavit and application for the issuance of a search warrant failed to provide enough information to determine the reliability of the informant. Williams also argues that the warrant was based on uncorroborated information. He further argues that the informant had not recently been in contact with him, and thus, the informant's information relating to his drug dealing was stale. We are unpersuaded by these arguments.

In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (*Gates*), the Supreme Court set forth a "totality-of-the-circumstances" test for determining probable cause to support a search warrant. Applications and affidavits for issuance of a warrant should be examined under a common sense approach and not in a hypertechnical fashion. *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). A reviewing court must accord substantial deference to the finding of an issuing judicial officer that probable cause exists. *Gates,* 462 U.S. at 236, 103 S.Ct. at 2331. The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable. Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence. *Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959) (*Draper*). If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable. *Gates,* 462 U.S. at

**2.** The Honorable Frederick R. Buckles, United States Magistrate Judge for the Eastern District of Missouri.

233–34, 103 S.Ct. at 2329–30; *Draper*, 358 U.S. at 313, 79 S.Ct. at 333.

 In the present case, the informant stated to Officer Tarpley that he had been in the apartment with Williams and seen quantities of cocaine. This information was based on the informant's first-hand observations, not merely from rumor or innuendo. Officer Tarpley stated valid reasons to support his belief that this information was accurate, including the proven reliability of the informant when working with law enforcement officers on past occasions. The affidavit specifically stated that the informant had provided reliable information in the past which led to the seizure of quantities of cocaine, marijuana and currency. Further, Officer Tarpley corroborated information from the informant that the apartment was listed in the name of Ritta Miller. Such independent corroboration bolsters the reliability and credibility of the informant's information, and thus, the finding of probable cause.

 We also reject Williams' claim that the information provided by the informant to support the issuance of the warrant was stale. The informant stated to Officer Tarpley that he had seen cocaine in its original packaging from Colombia in the Chalmette apartment on the same day the application was made. Such information from personal observation of criminal activity at the premises to be searched on the very day that the application for a warrant was made was sufficiently fresh to establish probable cause when the warrant was issued.

### 2. Unreasonable Delay In Execution Of The Warrant

 Williams next argues that, following the report from the confidential informant on October 22, 1992, cocaine was no longer present in the residence, probable cause for the warrant had evaporated, and therefore, the warrant was no longer valid when it was executed on October 30, 1992. Williams contends that the eight-day delay in execution of the search warrant was unreasonable.

We agree with Williams that, after learning from the informant that the cocaine was no longer in the apartment but that a new shipment would be arriving within a week, the better practice would have been for the officers to return to the court to update the information supporting the October 22, 1992 warrant and obtain a new warrant. However, the failure to return to court and seek a new warrant did not invalidate the search warrant in the present case because probable cause continued to exist at the time the warrant was executed.

 Whether the period of delay between issuance and execution of a warrant is reasonable necessarily depends upon the facts and circumstances of each case. The present case comes within the ambit of *United States v. Shegog*, 787 F.2d 420 (8th Cir.1986) (*Shegog*). In *Shegog*, Gregory Shegog argued that an eight-day delay between the issuance and execution of a search warrant was unreasonable and invalidated the search. A reliable, confidential informant informed detectives that Shegog was selling phencyclidine (PCP) from a particular residence. The informant told the detectives that he had been inside the residence in question and had seen a large quantity of PCP. Consequently, the detectives applied for and obtained a state search warrant on March 4, 1985. Later that same day, the confidential informant notified the detectives that the drugs at Shegog's residence had been shipped out but that more was expected to come in. On March 12, 1985, eight days after the search warrant had been issued, the informant told the detectives that the new shipment of drugs had arrived at Shegog's house. The detectives immediately executed the warrant and seized large quantities of drugs and packaging materials.

Like the present case, the record in *Shegog* indicated that probable cause existed on March 4, 1985, at the time the search warrant was issued, to believe that drugs and currency would be found at Shegog's residence. The *Shegog* court held that the search warrant was not unreasonably executed eight days later because probable cause continued to exist to believe that drugs would be found at the residence in question. *Shegog*, 787 F.2d at 422. *Shegog* concluded that probable cause continued to exist when the warrant was executed due to the continuing

and ongoing nature of the suspected criminal activity and similarity of facts existing at the time the warrant was issued and the time the warrant was executed. *Id.* at 423.

█ "In determining whether probable cause dissipated over time, a court must 'evaluate the nature of the criminal activity and the kind of property for which authorization to search is sought.'" *United States v. Simpkins,* 914 F.2d 1054, 1059 (8th Cir.1990) (*Simpkins*) (quoting *United States v. Foster,* 711 F.2d 871, 878 (9th Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984)). The present case parallels *Shegog.* The facts supporting the issuance of the warrant on October 22, 1992, to search the Chalmette apartment for quantities of cocaine substantially correspond to those facts existing on October 30, 1992, when the warrant was executed. Further, the continuing and ongoing nature of cocaine trafficking supports the continued existence of probable cause. It is reasonable for law enforcement officers to conclude that large-scale drug operations continued at the same location for a period of time.[3] *Simpkins,* 914 F.2d at 1059.

As in *Shegog,* we note that the issue of whether the delay in execution of the search warrant was unreasonable is a question that could have easily been avoided had the officers applied for and obtained a *second* search warrant on the basis of the informant's additional information regarding Williams' drug trafficking activities. Rather than speculate whether probable cause continued to exist, the better practice is to return to court and update the information and obtain a new warrant.

### B. Two–Point Increase In Sentencing For Possessing A Firearm

Williams argues that the district court erred in granting a two-point increase to his base offense level for possession of a firearm during the commission of the offense pursuant to the enhancement provision of the federal sentencing guidelines, § 2D1.1(b)(1). The semi-automatic firearm was found in a second-floor bedroom, behind a television console, in a briefcase which contained approximately $2,500.00 in currency. Because the officers found Williams, the cocaine and other drug paraphernalia in the kitchen on the first floor of the apartment, Williams argues that there was no nexus between the firearm and the offense conduct of possession of cocaine with intent to distribute. We disagree.

█ The district court's finding that a defendant's base offense level should be increased by two points for possession of a firearm during the commission of an offense will not be disturbed unless found to be clearly erroneous. *United States v. Bost,* 968 F.2d 729, 731 (8th Cir.1992). Section 2D1.1(b)(1) of the federal sentencing guidelines provides the enhancement should be applied if the firearm was present unless it is clearly improbable that the weapon was connected with the offense. According to the guidelines commentary, the enhancement for the possession of a firearm reflects the increased danger of violence when drug traffickers possess weapons. U.S.S.G. § 2D1.1(b)(1), comment. (n. 3). All that is necessary is to find that Williams possessed the firearm during the commission of the offense. This court has held that constructive possession exists where there is dominion or control over the premises by the defendant. *United States v. Matra,* 841 F.2d 837, 841–43 (8th Cir.1988). Upon examination of temporal and geographical proximity between the firearm and the cocaine, we hold the district court's enhancement of Williams' sentence was not clearly erroneous.

Williams was arrested in the Chalmette apartment, a residence involved in the stor-

---

**3.** Many courts have found probable cause to exist despite a substantial lapse of time between observation of the evidence of crime at a particular location and the issuance of a search warrant. In *United States v. Minis,* 666 F.2d 134 (5th Cir.), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982), for example, the Fifth Circuit Court of Appeals held that the ongoing nature of a marijuana-cultivating operation warranted the magistrate's inference that marijuana plants observed in June would still be present in

October. *See e.g., United States v. Dennis,* 625 F.2d 782 (8th Cir.1980) (ongoing nature of loan-sharking operation); *United States v. Hyde,* 574 F.2d 856 (5th Cir.1978) (ongoing nature of drug smuggling conspiracy); *United States v. Johnson,* 461 F.2d 285 (10th Cir.1972) (ongoing nature of illegal distillery). These cases properly stand for the proposition that, in some circumstances, the very nature of the evidence sought may suggest that probable cause is not diminished solely by the passage of time.

ing and selling of quantities of cocaine. Law enforcement officers searched the apartment and found cocaine, drug paraphernalia, the firearm, and $2,500.00 in cash. The fact that Williams was arrested and the cocaine seized on the first floor of the apartment, while the firearm and currency were seized on the second-floor of the apartment, is insignificant. The distance between Williams and the firearm was minimal. *See United States v. Baker*, 907 F.2d 53, 55 (8th Cir.1990) (increase in base offense level where the weapon was found in a metal box in the bedroom and cocaine found in bathroom); *United States v. Green*, 889 F.2d 187, 188 (8th Cir. 1989) (increase in base offense level where the weapon was found in a bedroom and cocaine base was found in other rooms of an apartment). The firearm was loaded and found in close proximity to the cocaine, currency and drug paraphernalia. The firearm was found inside a briefcase along with $2,500.00 in currency. We hold the district court's finding that a sufficient nexus existed between the cocaine and the firearm to support Williams' two-point enhancement was not clearly erroneous.

Accordingly, we affirm the judgment of the district court.