# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2034

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Carl Robert Carter, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 14, 2005
Filed: July 5, 2005

_____

Before WOLLMAN, HANSEN, and RILEY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Carl Robert Carter appeals from the district court's[1] denial of his motions to suppress evidence. He argues that the search warrants leading to his arrest and conviction were not based on probable cause and that the warrants did not particularly describe the place to be searched and the things to be seized in violation of the Fourth Amendment. We affirm.

_____

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

# I.

Trooper B.P. O'Sullivan of the Missouri State Highway Patrol arrested Darren Troxel on January 19, 2003. Troxel told O'Sullivan that Carter had a methamphetamine lab in his residence, that he had seen empty Coleman fuel and acetone cans in and around Carter's house, and that inside the house he had seen flasks containing red phosphorous on a hot plate and mason jars containing some kind of liquid. That night, Troxel gave a sworn statement to Hickory County Investigator John Scott and signed an affidavit. He attested that he had been at Carter's residence on Hickory Co. Road 41, HC 41, two nights earlier and recounted some of the items he had seen there. He further stated that one month earlier he had taken someone to Carter's residence to purchase methamphetamine, that the person purchased fifty dollars of methamphetamine, and that he witnessed the person smoke it. Lastly, Troxel stated that Carter had told him that he kept his phosphorous locked in a safe and had asked Troxel to buy pills for him.

The Associate Circuit Judge of the Circuit Court of Hickory County issued a search warrant for Carter's residence shortly after midnight on January 20, 2003. Attached to the application for the warrant were Troxel's affidavit, as well as an affidavit of O'Sullivan giving the factual basis for probable cause. The application set out the following details: the property contained a "brown double wide mobile home with…detached two car garage with [a] metal shed next to garage;" the officers desired to search all of these structures; the residence is "located North of Weaubleau on HC 31;" and to reach the residence, one must "[t]urn right on HC 41, go one-half mile, [and] at first curve turn tight into Driveway."

The search warrant was executed, items associated with methamphetamine and three firearms were found, and Carter was arrested. On June 10, 2003, while Carter was on pretrial release, another search warrant was issued. It contained essentially the same description of Carter's residence and the structures to be searched. In support of this second warrant application, the prosecuting attorney attached

affidavits of Scott and Michael Barnett, whom Scott had interviewed at the county jail. The affidavits recounted facts similar to those stated in the affidavits submitted in support of the first search warrant. This warrant was executed the same day, and deputies found items associated with methamphetamine production, a firearm, and ammunition.

A jury returned a verdict against Carter on all six counts of an indictment alleging drug and fire-arm related offenses in violation of 18 U.S.C. §§ 922(g)(1), 924 (a)(2), and 3147(1), and 21 U.S.C. §§ 841(a)(1), 841(c)(2), and 846. The district court sentenced Carter to 210 months' imprisonment.

## II.

Carter contends that the search warrants were issued without probable cause and that therefore the results of the searches should have been inadmissible at trial. "We examine the factual findings underlying the district court's denial of the motion to suppress for clear error and review de novo the ultimate question of whether the Fourth Amendment has been violated." United States v. Neumann, 183 F.3d 753, 755 (8th Cir. 1999). The court issuing a search warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Accordingly, we determine the existence of probable cause based on the totality of the circumstances and, rather than reviewing the issuance of the warrant in a hypertechnical fashion, adopt a common-sense approach. United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993).

Carter argues that Troxel's statements to the police are insufficient to establish probable cause. We disagree. The facts that Troxel had been placed under arrest, had not served as an informant previously, and that his tip had not been independently

-3-

corroborated prior to the issuance of the search warrant do not defeat a finding of probable cause in this instance. The Supreme Court has noted that "even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case." Gates, 462 U.S. at 234. Troxel's statements were, on their face, based on first-hand knowledge and were attested to under oath in the affidavit. The items Troxel claimed to have seen on Carter's property are in fact associated with methamphetamine production, and Troxel described these items in detail.

A premium is indeed placed on corroboration of the tip by independent evidence and evidence of past reliability in cases where the statements of a confidential informant provide the basis for probable cause. See, e.g., Williams, 10 F.3d 590; United States v. Gabrio, 295 F.3d 880 (8th Cir. 2002); United States v. Lucca, 377 F.3d 927 (8th Cir. 2004). Troxel was not a confidential informant, however. The district court rightly considered that Troxel could have been prosecuted had he made false sworn statements to the officers and noted that this fact made him presumptively more reliable than an anonymous source. Troxel would have received a personal benefit only if the information he provided was reliable, and he would likely have suffered a detriment if the information he provided proved unreliable. Additionally, O'Sullivan dealt with Troxel in person and therefore had an opportunity to assess his credibility. Although Troxel may have been under the influence of a controlled substance at the time he made the statements at issue, O'Sullivan and Scott had the opportunity to observe him. Troxel later testified that he was under the influence of methamphetamine when he gave his affidavit and that he did not recall giving any statements to O'Sullivan; however, "[e]ven if the affidavit were deemed deficient in hindsight, moreover, evidence would not be suppressed if the police acted in good faith reliance on a search warrant issued by a neutral and detached magistrate." Lucca, 377 F.3d at 933.

The same analysis applies to the warrant issued on the basis of the information supplied by Barnett and the corresponding affidavits. Probable cause for the second search was further bolstered by Barnett's independent and first-hand description of items matching those that the officers encountered on Carter's property during the first search. It was not clearly erroneous for the Associate Circuit Judge to find a "fair probability" that contraband or evidence of a crime would be found on Carter's property.

We conclude that both warrants were supported by probable cause. Even if Carter had been able to show that probable cause did not exist, the evidence collected would nonetheless be admissible because the officers who executed the search warrants acted in good faith and in objectively reasonable reliance on the warrant. See United States v. Leon, 468 U.S. 897 (1984).

**III.**

Carter's claim that the search warrants were invalid because they failed to particularly describe the place to be searched is similarly unavailing. The Fourth Amendment to the United States Constitution states that "no Warrants shall issue, but upon probable cause…and particularly describing the place to be searched, and the persons or things to be seized." To determine a warrant's compliance with this Constitutional requirement, we ask "whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." United States v. Gitcho, 601 F.2d 369, 371 (8th Cir. 1979). Carter notes that the warrants did not list the county or state in which the property was located, that the first warrant wrongly states that the residence is located on HC 31, and that both warrants wrongly describe the driveway's location as "at the first curve" when in fact it is located prior to the first curve. For local officers who know the roads within their jurisdiction and where there is no ambiguous geography in play (such as various roads by the same name),

there is no need for the warrant to list the county and state in order for the above requirement to be met. Furthermore, although the first warrant states that the residence is located on HC 31, it then goes on to state that the driveway is off of HC 41, thereby enabling the officers to locate the premises with reasonable effort. Finally, the evidence does not show that any erroneous description of the driveway's precise location led the officers to expend more than a "reasonable effort" to locate the premise or that it created a reasonable probability that another residence might be mistakenly searched. Accordingly, the warrants did not fail to satisfy the requirement of particularity.

The judgment is affirmed.

_____