UNITED STATES of America,
Plaintiff,

v.

Arthur Lee CRISSLER, Defendant.

No. 1:06–cr–080.

United States District Court,
D. North Dakota,
Southwestern Division.

July 11, 2007.

Paul R. Emerson, Scott J. Schneider, U.S. Attorney's Office, Bismarck, ND, for Plaintiff.

William Delaney Schmidt, Federal Public Defender Office, Bismarck, ND, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

HOVLAND, Chief Judge.

Before the Court is the Defendant's Motion to Suppress filed on June 22, 2007. The Government filed a response opposing the motion on June 27, 2007, and the Defendant filed a reply brief on June 29, 2007. For the reasons set forth below, the motion to suppress is denied.

## I. BACKGROUND

On July 26, 2006, certain evidence was seized pursuant to a search warrant executed at 820 Lincoln Avenue in Bismarck, North Dakota. The evidence that was seized resulted in the defendant, Arthur Lee Crissler, being charged in a criminal complaint with the offense of possession with intent to distribute methamphetamine in September 2006. Crissler was subsequently indicted on two counts of possession with intent to distribute, and one count of possession of a firearm by an unlawful user of a controlled substance in October 2006. See Docket No. 14. The seizures were the result of the execution of a search warrant issued by Judge Thomas Schneider of the South Central Judicial District in the State of North Dakota.

Crissler contends that his Fourth Amendment rights were violated because probable cause did not exist for the issuance of the search warrant in state court. Crissler contends that the state district court judge inappropriately relied on a confidential informant, and that one of the law enforcement officers who testified in support of the search warrant knowingly, intentionally, or recklessly failed to advise the state court judge of relevant facts concerning the confidential informant.

### A. THE SEARCH WARRANT

On July 26, 2006, Judge Thomas Schneider conducted a hearing on an application for a search warrant and received testimony from Ben Leingang, a member of the Metro Area Safe Trail Task Force, and Ray Eisenmann, a police officer with the Mandan Police Department assigned to the drug task force. See Docket No. 46-1. Leingang testified that for approximately five or six months, the Task Force had received information from law enforcement agencies of drug trafficking occurring at 820 Lincoln Avenue in Bismarck, North Dakota. Leingang testified that he performed periodic surveillance of the residence and had observed a number of "individuals leaving the residence and coming to the residence at all hours of the night." See Docket No. 46-1, p. 5. Leingang testified that he performed surveillance on the residence on the night of July 25, 2006, and again observed a number of vehicles in the driveway and on the streets near the residence. Id. at 6. Based on his training and experience, Leingang testified that the number of individuals and vehicles frequenting the residence were indicative of drug trafficking.

Officer Eisenmann testified that on July 26, 2006, he had assisted the Bismarck Police Department in the arrest of an individual on a warrant out of Morton County, North Dakota. Officer Eisenmann testified that the individual (later identified as Gene Wilkie) had worked as a confidential informant in the past and that Wilkie had previously provided information that led to the arrest of three individuals in April of 2006. Officer Eisenmann testified that the information received from Gene Wilkie regarding the April 2006 arrests was reliable. See Docket No. 46-1, p. 12. Officer Eisenmann also informed Judge Schneider that Wilkie had been deactivated as a confidential informant, but Eisenmann was not asked and did not disclose the reason(s) why Wilkie had been deactivated.

Officer Eisenmann informed the state court judge that Wilkie had been arrested

on July 26, 2006 for failure to appear. *See* Docket No. 46–1, p. 16. Officer Eisenmann informed the judge that at the time Wilkie was arrested, he had in his possession a scale with methamphetamine residue. During Officer Eisenmann's conversation with Wilkie, Wilkie said that he had been at Crissler's house that morning and that he (Wilke) had been dealing drugs for Crissler for the last month. *See* Docket No. 46–1, pp. 12, 16. Wilkie further informed Officer Eisenmann that he had seen a quarter pound of methamphetamine in a green pouch that Crissler had on his person, and a pound and a half of marijuana located in a cooler in the basement of the residence. Wilkie said that Crissler had methamphetamine in a black suburban parked in the driveway at Crissler's residence. Officer Eisenmann corroborated that Crissler owned a black suburban and that he and Leingang had driven by the residence at 820 Lincoln Avenue before the court hearing and had observed the black suburban/blazer parked in the driveway. *Id.* at 10. Wilkie also informed Officer Eisenmann that Crissler was a gun collector and that Crissler had guns in the house. Officer Eisenmann testified that he had no reason to believe that the information Wilkie had provided was unreliable. *Id.* at 12. Judge Schneider found probable cause for the issuance of a search warrant. *Id.* at 20.

Upon executing the search warrant, the law enforcement officers found approximately one-and-one-half pounds of marijuana and 91 grams of methamphetamine. Most of the drugs were found in the basement of the residence inside a big screen television. The officers also located drug paraphernalia and a firearm in the residence.

## B. THE CONFIDENTIAL INFORMANT

Crissler challenges the search conducted at 820 Lincoln Avenue based on a lack of probable cause. Crissler contends that the search warrant was based on information obtained from an unreliable confidential informant, and that Officer Eisenmann knowingly, intentionally, or recklessly failed to advise the state court judge of information that would have had a significant bearing on the determination as to whether the confidential informant was reliable. Specifically, Crissler contends that Officer Eisenmann failed to inform the state court judge of the circumstances surrounding Wilkie's "past performance" as an informant, and the timing and reasons for Wilkie's deactivation as a confidential informant.

In support of this contention, Crissler cites to a "Report of Investigation" regarding the previous arrest of Gene Wilkie on April 6, 2006. *See* Docket No. 47–2. The report notes that Officer Eisenmann and another officer were conducting surveillance on a residence and were planning to arrest Leora Wilkie on an outstanding drug charge. Officer Eisenmann saw several individuals get into a vehicle, one of whom included Gene Wilkie, and another individual whom Officer Eisenmann believed to be Leora Wilkie. Officer Eisenmann stopped the vehicle and a search revealed several items of drug paraphernalia. At that point, Gene Wilkie provided the law enforcement officers with information regarding drugs and drug dealers who were located in the residence, including Leora Wilkie. The information obtained from Gene Wilkie ultimately led to the issuance of a search warrant and the arrest of three people, including Leora Wilkie, who was the subject of the initial surveillance. *See* Docket No. 46–2, p. 8, and Docket No. 47–2, p. 2.

## II. LEGAL DISCUSSION

### A. PROBABLE CAUSE

■ The Fourth Amendment secures the persons, houses, papers, and effects of

the people against unreasonable searches and seizures by the government. The general rule is that the government must secure a warrant before conducting a search. *United States v. Alberts,* 721 F.2d 636, 638 (8th Cir.1983). "The Fourth Amendment requires a showing of probable cause to support a search warrant." *United States v. Gabrio,* 295 F.3d 880, 882 (8th Cir.2002). "The court issuing a search warrant must 'make a practical commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Carter,* 413 F.3d 712, 714 (8th Cir.2005) (citing *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)); *see United States v. Williams,* 10 F.3d 590, 593 (8th Cir.1993) (citing *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) ("Applications and affidavits for issuance of a warrant should be examined under a common sense approach and not in a hypertechnical fashion.")). "The affidavit cannot be attacked paragraph by paragraph; it must be evaluated as a whole." *United States v. Anderson,* 933 F.2d 612, 614 (8th Cir.1991). When reviewing the sufficiency of an affidavit supporting a search warrant, it is well-established that considerable deference is accorded to the issuing judicial officer. *See United States v. Fulgham,* 143 F.3d 399, 401 (8th Cir.1998); *United States v. Oropesa,* 316 F.3d 762, 766 (8th Cir.2003) (citing *Illinois v. Gates,* 462 U.S. 213, 236, 238–38, 103 S.Ct. 2317, 76 L.Ed.2d 527). The determination of probable cause is made after considering the totality of the circumstances. *United States v. Gettel,* 474 F.3d 1081, 1086 (8th Cir.2007). After a judge has issued a search warrant upon a finding of probable cause, "that finding deserves great defer-

ence." *Walden v. Carmack,* 156 F.3d 861, 870 (8th Cir.1998).

 Based on a careful review of the entire record, and specifically the information provided to Judge Schneider at the probable cause hearing on July 26, 2006, combined with the considerable deference to be given to Judge Schneider's findings and decision, this Court finds that probable cause existed to support the issuance of a search warrant on July 26, 2006. Judge Schneider was presented with substantial evidence suggesting that Arthur Crissler was involved in drug trafficking. The testimony of Officers Leingang and Eisenmann established that, based on their training and experience, the number of individuals and vehicles frequenting the residence at 820 Lincoln Avenue in Bismarck was conducive to drug trafficking. This was corroborated by information obtained from Gene Wilkie. The testimony also established that Officer Eisenmann had dealt with informant Gene Wilkie in the past, that Wilkie had proven to be a reliable informant, and that Officer Eisenmann had no reason to doubt the accuracy of the information on Crissler as provided by Wilkie. Wilkie acknowledged that he had been at Crissler's house the morning of July 26, 2006, that he had observed significant quantities of drugs (methamphetamine and marijuana), and that Wilkie had been selling methamphetamine for Crissler for approximately one month. It is well-settled that statements against the penal interest of an informant carry considerable weight. *See United States v. Harris,* 403 U.S. 573, 583, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971)(stating that "[a]dmissions of crime ... carry their own indicia of credibility ... sufficient at least to support a finding of probable cause to search.").

Based on the totality of the circumstances, and with great deference to the

issuing judicial officer, the Court finds that there was a substantial basis in the record for the judicial officer (Judge Schneider) to find probable cause for the issuance of a search warrant.

## B. *FRANKS CHALLENGE*

■ In *Franks v. Delaware,* 438 U.S. 154, 155–156, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court held that the Fourth Amendment entitles a defendant to an evidentiary hearing on the veracity of a search warrant affidavit if the defendant can make a "substantial preliminary showing" that the affiant intentionally or recklessly included a false statement in the affidavit or omitted relevant information. *See United States v. Mathison* 157 F.3d 541, 547–548 (8th Cir.1998). The requirement of a substantial showing "is not lightly met." *United States v. Wajda,* 810 F.2d 754, 759 (8th Cir.1987). "A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing." *United States v. Mathison* 157 F.3d 541, 548 (8th Cir.1998). Further, "[w]hen no proof is offered that an affiant deliberately lied or recklessly disregarded the truth, a Franks hearing is not required." *United States v. Moore,* 129 F.3d 989, 992 (8th Cir.1997).

■ To warrant a *Franks* hearing, the allegedly false statements must be "necessary to the finding of probable cause." *Franks,* 438 U.S. at 156, 98 S.Ct. 2674. *See United States v. Gleich,* 397 F.3d 608, 613 (8th Cir.2005).

To prevail on a *Franks* challenge to a warrant, a defendant must first demonstrate that the law enforcement official deliberately or recklessly included a false statement or omitted a truthful statement from his warrant affidavit. *United States v. Coleman,* 349 F.3d 1077, 1083 (8th Cir.2003). "Mere negli-

gence on the part of law enforcement officers" does not satisfy this initial requirement. *United States v. Gibson,* 123 F.3d 1121, 1124 (8th Cir.1997). Second, a defendant must show that if the offensive content in the warrant affidavit is ignored, its remaining content "would be insufficient to establish the probable cause." *Coleman,* 349 F.3d at 1083.

*United States v. Carpenter,* 422 F.3d 738, 745 (8th Cir.2005).

The *Franks* challenge is predicated upon the alleged omissions of Officer Eisenmann while testifying at the probable cause hearing in support of the issuance of a search warrant. Crissler contends, in part, that Officer Eisenmann omitted relevant information concerning Wilkie's past performance as an informant in April 2006, and the fact that Wilkie had been deactivated as an informant only six days before the search warrant for Crissler was issued. Crissler also contends that Officer Eisenmann should have discovered where Wilkie was living in July 2006 and should have disclosed that information to the judge at the probable cause hearing. Crissler contends that if Judge Schneider had known that Wilkie was living at the Crissler residence, Wilkie's credibility would have been seriously questioned.

■ The Court has carefully reviewed the entire record and the testimony at the probable cause hearing in state court before Judge Schneider. The Court finds that the Defendant has not met his burden under *Franks* and has failed to make a "substantial preliminary showing" that Officer Eisenmann deliberately, intentionally, or recklessly included a false statement or omitted relevant information. Mere allegations of wrongdoing, standing alone, are insufficient to make the difficult preliminary showing needed to trigger the need for a *Franks* hearing. In this case, there is no offer of proof in the form of an

affidavit or other reliable evidence or corroboration to support the accusations that the law enforcement officers involved deliberately, intentionally, or recklessly omitted relevant information at the probable cause hearing before Judge Schneider. The Defendant has offered little but mere allegations in an attempt to establish that Officer Eisenmann's alleged omissions were made deliberately, recklessly, or intentionally. The mere allegations, standing alone without an offer of proof, are insufficient and do not meet the threshold requirement of a substantial showing. The Court expressly finds that the Defendant has failed to establish a "substantial preliminary showing" to require that a *Franks* hearing be held under the circumstances.

## III. *CONCLUSION*

For the reasons set forth above, the Defendant's Motion to Suppress is **DENIED** (Docket No. 44). Trial in this matter is scheduled to commence on Tuesday, July 24, 2007, in Bismarck, North Dakota. A two-day trial is anticipated.

**IT IS SO ORDERED.**