# United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-1159

_____

United States of America

*Plaintiff - Appellee*

v.

Caruthers Cordale Dukes

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas

_____

Submitted: January 17, 2014
Filed: July 10, 2014

_____

Before GRUENDER, BENTON and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Following a three-day trial, Caruthers Cordale Dukes was convicted of conspiracy to distribute cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C); three counts of possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and one count of being a felon in

possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court[1] sentenced Dukes to a total of 240 months imprisonment. Dukes appeals the district court's denial of his motion to suppress evidence, the court's failure to allow additional time to review Jencks material, and the sufficiency of the evidence for the drug charges. Having jurisdiction to consider this appeal under 28 U.S.C. § 1291, we affirm.

## I. Background

"We recite the facts in the light most favorable to the jury's verdict." United States v. Stevens, 439 F.3d 983, 986 (8th Cir. 2006). Through the use of a paid cooperating informant (CI), Special Agent (SA) Brian Tichenor of the Federal Bureau of Investigation (FBI) became aware of an individual known as "Twin"—later identified as Kevin Harton[2]—who was able to set up purchases of cocaine base (crack cocaine) in the Little Rock area. Working on behalf of the FBI, the CI made a number of controlled purchases through Harton. On July 28, July 29, and August 2, 2010, Harton took the CI to 1002 Park Street, Little Rock, where the CI provided Harton with FBI buy money. After going into the residence, Harton brought crack cocaine back to the CI on all three occasions.

On August 5, 2010, SA Tichenor obtained a search warrant for 1002 South Park Street. When the FBI searched the residence, they seized crack cocaine, drug paraphernalia, weapons, and items indicating Dukes lived at the house. On

---

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

[2]Harton was ultimately indicted as a co-defendant to Dukes. We refer to "Twin" as Harton throughout this opinion.

September 6, 2011, a grand jury sitting in the Eastern District of Arkansas returned an eleven-count indictment against Dukes, Harton, and a third individual. Dukes was charged in five counts.

Dukes pled not guilty and moved to suppress the evidence seized from his residence. Following a hearing, the district court denied the motion to suppress, finding the affidavit supported a finding of probable cause to issue a search warrant. The court rejected Dukes' contention that Harton was an informant on whom the FBI relied for information, instead characterizing Harton as "an instrumentality that the confidential informant used to effect these buys in this house." In finding probable cause, the district court relied in part on the surveillance that was conducted during the three transactions. The court also found it "common sense" that Harton was obtaining crack cocaine at 1002 South Park Street: Harton took the CI to the same house on three separate occasions, each time leaving the house within minutes with crack cocaine in hand.

On August 8, 2012, the jury found Dukes guilty on all counts. On January 10, 2013, Dukes was sentenced to 240 months imprisonment on the drug charges and 120 months imprisonment on the firearm charge, to be served concurrently.

## II. Discussion

### A. Motion to Suppress

Dukes first appeals the denial of his motion to suppress the evidence seized during execution of the search warrant. Dukes renews his argument that the search warrant affidavit did not provide probable cause to search his residence because Harton was a second informant for whom no reliability information was provided.

The government counters that the affidavit did not have to provide any information regarding Harton's reliability because he was not acting as a government informant when he took the CI to Dukes' house.

"We review the denial of a motion to suppress de novo but review underlying factual determinations for clear error, giving due weight to the inferences of the district court and law enforcement officials." United States v. Nichols, 574 F.3d 633, 636 (8th Cir. 2009) (quotation omitted). "The district court's conclusion regarding a motion to suppress will be affirmed 'unless it is not supported by substantial evidence on the record; it reflects an erroneous view of the applicable law; or upon review of the entire record, the appellate court is left with the definite and firm conviction that a mistake has been made.'" United States v. Rodriguez, 711 F.3d 928, 934–35 (8th Cir. 2013) (quoting United States v. Rodriguez-Arreola, 270 F.3d 611, 615 (8th Cir. 2001)).

"Issuance of a search warrant must be supported by probable cause, and '[t]he existence of probable cause depends on whether, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. at 936 (quoting United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005)). We "'accord great deference to a magistrate's determination as to whether an affidavit establishes probable cause.'" Id. (quoting Solomon, 432 F.3d at 827). The issuing judge should review the affidavit with a "common sense approach and not in a hypertechnical fashion." Solomon, 432 F.3d at 827 (quotation omitted).

"Where probable cause depends upon information supplied by an informant, '[t]he core question . . . is whether the information is reliable.'" United States v. Keys, 721 F.3d 512, 518 (8th Cir. 2013) (quoting United States v. Williams, 10 F.3d 590, 593 (8th Cir.1993)). "'Information may be sufficiently reliable to support a probable cause finding if . . . it is corroborated by independent evidence.'" Id.

-4-

(quoting <u>Williams</u>, 10 F.3d at 593). "If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable." <u>Id.</u> (quoting <u>Williams</u>, 10 F.3d at 593).

In this case, the affidavit stated the CI had worked with the FBI for approximately one year. During that time, the CI provided information leading to several fugitive arrests and participated in controlled narcotics purchases resulting in search warrants. The CI came to the FBI with information that Harton was known to arrange sales of crack cocaine. Under the supervision of the Violent Crimes-Joint Task Force (VC-JTF), which included SA Tichenor, the CI called Harton and arranged to meet him at the intersection of 12th and Thayer Streets in Little Rock. Harton agreed to set up the purchase of approximately one-half ounce of crack cocaine. Surveillance officers observed the CI enter a silver Chevrolet Impala occupied by Harton. The affidavit stated agents were unable to maintain visual surveillance because they did not know where the drug transaction was to take place. However, the CI was equipped with an audio recording device during the transaction, to which agents listened. The CI later told agents he rode in the Impala to 1002 South Park Street, where he gave Harton $630 provided by the FBI. Harton entered the residence and returned a short time later, handing the CI a plastic bag containing the suspected crack cocaine. The CI and Harton then returned to the original meeting spot. A field test was conducted on the contents of the bag, which tested positive for the presence of cocaine, and it appeared to be the desired quantity.

The affidavit detailed two additional controlled buys. Again, the CI called Harton requesting he set up the purchase of crack cocaine. During both transactions,

the CI met Harton at the same location and proceeded to 1002 South Park Street.[3] Agents were able to maintain visual surveillance during both drug transactions and to photograph Harton entering and exiting the residence. During the second controlled purchase, the CI attempted to enter the residence, but was denied access. During the second and third controlled buys, the CI again provided Harton with FBI buy funds. Harton entered the house and returned quickly, providing the CI with a plastic bag containing the crack cocaine. Both times the substance in the plastic bag field-tested positive for the presence of cocaine, and the quantity was consistent in appearance with the amount requested. The CI and the CI's vehicle were searched before and after each of the controlled buys.

Dukes does not challenge the reliability of the CI. Instead, he directs his argument to the fact that the CI never dealt directly with him, only with Harton. Dukes asserts that because the affidavit did not provide any information about the veracity, basis of knowledge, or reliability of Harton by which the issuing judge could assess Harton as an informant, the affidavit could not establish probable cause. He further notes that the CI never went inside the house at 1002 South Park Street and that Harton and his vehicle were never searched prior to the drug transactions between the CI and Harton. Dukes argues it was equally likely Harton had the crack cocaine on his person or hidden on the property prior to entering the house, and therefore probable cause did not exist to search the house.

We conclude the information contained in the search warrant application provided sufficient probable cause to issue a warrant to search Dukes' residence. From the affidavit, it is reasonable to infer that Harton obtained the crack cocaine he sold to the CI from someone inside the house. "[I]t is well established that a judge may draw reasonable inferences from the totality of the circumstances in determining

---

[3]On the second occasion the CI drove his own vehicle to 1002 South Park Street; on the third occasion, the CI rode in Harton's vehicle.

whether probable cause exists to issue a warrant . . . ." United States v. Vega, 676 F.3d 708, 717 (8th Cir. 2012) (quoting United States v. Thompson, 210 F.3d 855, 860 (8th Cir. 2000)). As outlined above, the affidavit described three separate occasions on which a reliable CI and Harton met at one location and traveled to 1002 South Park Street. Agents conducted surveillance and were able to photograph Harton entering and quickly exiting the residence. Harton provided the crack cocaine to the CI only after returning to the vehicle where the CI waited. Based upon these facts, there was a fair probability that contraband or evidence of criminal activity would be found at 1002 South Park Street. See id.

## B. Jencks Materials

Dukes next asserts the district court abused its discretion when it did not allow his attorney additional time to review Jencks materials.[4] "The Jencks Act requires that the prosecutor disclose any statement of a witness in the possession of the United

---

[4]Dukes also contends, for the first time on appeal, that not allowing him sufficient time to personally review the Jencks materials violated his Sixth Amendment right to confrontation because he was unable to provide effective input to his attorney. "An error by the trial court, even one affecting a criminal defendant's constitutional right, is forfeited if not timely asserted." United States v. Thornberg, 676 F.3d 703, 706 (8th Cir. 2012) (citation omitted). "Accordingly, our review is for plain error." Id. (citation omitted). In order to prevail, Dukes must show "(1) the district court committed an error, (2) the error is clear or obvious, and (3) the error affected his substantial rights." Id. (quotation omitted). We have never held that a criminal defendant has a Sixth Amendment right to a continuance in order to have sufficient time to review Jencks materials himself. Also, Dukes has not shown how any alleged error affected his substantial rights—in other words, that there is any reasonable probability this lack of time "affected the outcome of the district court proceedings." United States v. Martin, 714 F.3d 1081, 1084 (8th Cir. 2013) (quotation omitted). As a result, we conclude the district court did not commit plain error.

States which relates to the subject testified to by the witness on direct examination." United States v. Stroud, 673 F.3d 854, 863 (8th Cir. 2012) (quotation omitted) (citing 18 U.S.C. § 3500(b)). The prosecutor provided copies of Jencks materials to defense counsel prior to jury selection. Defense counsel then asked for "an hour or two to be able to look over" the documents "because I know there's a document that I'm looking for that I've taken notes on that I can't find in here because I'm just breezing through it." Counsel acknowledged he had already reviewed the Jencks materials at the United States Attorney's office before trial. Counsel specifically stated he was "not asking to continue for the rest of the day"; he was just asking for "an hour or two to be able to look over this." The district court noted defense counsel would have time over the lunch hour; counsel responded, "That's true." The court offered to "revisit" the issue after lunch if counsel needed more time. A break of an hour and fifteen minutes was taken for lunch. Defense counsel did not reiterate his request.

We construe Dukes' argument on appeal to be that the district court erred by not granting him a continuance of "an hour or two." We review a district court's denial of a request for continuance for an abuse of discretion and will only reverse if the moving party shows prejudice by the denial. United States v. Wright, 682 F.3d 1088, 1090 (8th Cir. 2012). "District courts are afforded broad discretion when ruling on requests for continuances." United States v. Chahia, 544 F.3d 890, 896 (8th Cir. 2008) (quotation omitted). The district court did not abuse its discretion by suggesting counsel use the lunch hour as his requested additional time. Although the district court did not grant Dukes a "continuance," he essentially got what he had requested: "an hour or two" to review the Jencks materials. The court told Dukes' counsel the issue of additional time to review documents could be "revisit[ed]" if the lunch hour proved insufficient, and Dukes' counsel did not request additional time. He therefore has waived the argument that the time given was inadequate. See United States v. Booker, 576 F.3d 506, 511 (8th Cir. 2009) (waived claims unreviewable on appeal).

## C. Sufficiency of the Evidence

Dukes next argues there was insufficient evidence to support his drug convictions. "'We review a challenge to the sufficiency of the evidence deferentially . . . and affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Anderson, 674 F.3d 821, 828 (8th Cir. 2012) (quoting United States v. Augustine, 663 F.3d 367, 373 (8th Cir. 2011)). "'[W]e look at the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict.'" Augustine, 663 F.3d at 373 (quoting United States v. Campa-Fabela, 210 F.3d 837, 839 (8th Cir. 2000)).

To convict Dukes of conspiracy to possess with intent to distribute cocaine base, the government needed to prove beyond a reasonable doubt that "(1) there was an agreement to achieve an illegal purpose, (2) that [Dukes] knew of the agreement, and (3) that [Dukes] knowingly participated in the conspiracy." Chahia, 544 F.3d at 893–94 (quotation omitted). To convict Dukes of possession with intent to distribute cocaine base, the government had to prove beyond a reasonable doubt that Dukes "(1) knowingly possessed a controlled substance and (2) intended to distribute some or all of it." United States v. Thompson, 686 F.3d 575, 583 (8th Cir. 2012) (citation omitted).

Dukes asserts the evidence is insufficient because Harton, whose credibility Dukes questioned, was the only witness who could testify to receiving drugs from Dukes. Dukes testified at trial. He did not dispute having ties to the house at 1002 South Park Street, including paying rent and keeping his dogs in the utility room, but he denied selling drugs to Harton. Harton testified that on July 28, July 29, and August 2, 2010, he obtained crack cocaine from Dukes inside the residence at 1002 South Park Street, which he then sold to the CI. He testified Dukes knew he was coming to the house because he called Dukes each time before taking the CI there.

Harton further testified that a surveillance photo taken during the controlled buy on July 29 depicted Dukes peeking out the front door of the residence as Harton was going up the steps. The photographs of Harton at the house on July 29 and August 2 and the CI's audio recordings corroborate Harton's testimony. The CI and law enforcement officers also testified that Harton brought the CI to 1002 South Park Street, where the CI was provided with the drugs only after Harton returned from the house.

On cross-examination, Dukes asked Harton about an affidavit Harton signed while in jail, recanting his statements that Dukes was his supplier. The affidavit was notarized by a jailor, who also testified Harton signed the affidavit. Harton admitted he had signed such an affidavit, but he insisted he had torn it up and thrown it away. Based on Harton's statement regarding the affidavit, Dukes argues the jury should not have believed any of Harton's testimony. "We do not weigh the evidence or witness credibility because the jury has the sole responsibility to resolve conflicts or contradictions in testimony." United States v. Alexander, 714 F.3d 1085, 1090 (8th Cir. 2013) (quotation omitted). "The jury's credibility determinations are virtually unreviewable on appeal." Id. (quotation omitted). We accord the jury's verdict the "benefit of all reasonable inferences." United States v. Moya, 690 F.3d 944, 950 (8th Cir. 2012) (quotation omitted). A jury could reasonably infer that Harton was obtaining crack cocaine at 1002 South Park Street on July 28, July 29, and August 2, 2010. It was also reasonable for the jury to credit Harton's testimony that Dukes was the person who gave him the crack cocaine on those dates. We find there was more than substantial evidence to support the jury's verdicts.

### III. Conclusion

Based on the foregoing, we affirm.

_____