# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1572

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Mingwen Yang, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 16, 2009
Filed: May 10, 2010

_____

Before BYE, BEAM, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Mingwen Yang was charged with conspiracy to commit marriage fraud, in violation of 8 U.S.C. § 1325(c) and 18 U.S.C. § 371, and the substantive offense of marriage fraud (including aiding and abetting), in violation of 8 U.S.C. § 1325(c) and 18 U.S.C. § 2. The case proceeded to trial, and Yang moved for judgment of acquittal at the close of the government's case. The district court[1] denied the motion.

_____

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

A jury convicted Yang on both counts, and the district court sentenced him to one year and one day in prison. Yang appeals the denial of his motion for judgment of acquittal, arguing that the evidence presented by the government was insufficient to convict him on either count. We affirm.

Yang is a Chinese citizen who entered the United States in April 2007 on a K-1 visa. This is a non-immigrant visa that permits an alien who is engaged to marry a United States citizen to enter the country for the purpose of marrying the citizen. Yang's fiancée, and the sponsor of his entry into the United States, was a United States citizen named Nou Chang, who resided in Minnesota. The relationship between Yang and Chang was facilitated by a man named Le Wu. Wu introduced the couple, arranged two trips to China for Nou Chang to meet with Yang, and assisted with the paperwork necessary for Yang's entry into the United States.

The government's theory at trial was that Wu was the leader of a conspiracy to commit marriage fraud, in which United States citizens such as Chang were paid to marry Chinese aliens like Yang. The purpose of these marriages was to obtain entry into the United States for the Chinese aliens. Consistent with this theory, Chang pled guilty to aiding and abetting marriage fraud, and testified at trial against Yang.

The marriage fraud statute provides that "[a]ny individual who knowingly enters into a marriage for the purpose of evading any provision of the immigration laws" commits an offense. 8 U.S.C. § 1325(c). The jury was instructed that a conviction for conspiracy to commit marriage fraud required proof beyond a reasonable doubt that there was an agreement or understanding to commit marriage fraud during the relevant time period, that Yang voluntarily and intentionally joined the agreement, that Yang knew the purpose of the agreement when he joined it, and that one or more of the conspirators committed an overt act in furtherance of the agreement. Final Jury Instruction No. 17; *see generally United States v. Holloway*, 128 F.3d 1254, 1257 (8th Cir. 1997). The substantive offense of marriage fraud

required proof that Yang knowingly entered into a marriage with a United States citizen, did so for the purpose of evading the immigration laws, and knew or had reason to know of the immigration laws. Final Jury Instruction No. 19; *see United States v. Chowdhury*, 169 F.3d 402, 406 (6th Cir. 1999). The jury was instructed that Yang could be convicted of the substantive offense on a theory of aiding and abetting, if he knew that marriage fraud was being committed, knowingly acted in some way for the purpose of aiding the commission of the offense, and knew or had reason to know of the immigration laws. Final Jury Instruction No. 26; *see generally United States v. Hernandez*, 301 F.3d 886, 890 (8th Cir. 2002).

Yang does not dispute that Wu and Chang entered into a conspiracy to commit marriage fraud, or that Chang acted without any intention of entering into a valid marriage with Yang. Yang contends, however, that the government failed to present sufficient evidence that he had the requisite knowledge and intent to commit the charged offenses. It is logically possible that one party to a marriage can commit fraud while the other party genuinely intends to marry. *See United States v. Tagalicud*, 84 F.3d 1180, 1185 (9th Cir. 1996). The question here is whether a reasonable jury could reject Yang's theory and accept the government's on the evidence in this case.

We review the denial of a motion for judgment of acquittal *de novo*. *United States v. Nolen*, 536 F.3d 834, 842 (8th Cir. 2008). We will reverse a conviction only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* We are not free to re-weigh the evidence, and "[q]uestions of credibility are the province of the jury." *United States v. Chavez*, 230 F.3d 1089, 1091 (8th Cir. 2000).

The evidence at trial, viewed in the light most favorable to the verdict, included several indicia of Yang's knowledge and intent to enter into a marriage for the purpose of evading the immigration laws, as well as his knowing entry into an

agreement for that purpose. First, the jury received evidence that Yang began to prepare his immigration papers over a month before he met Chang in 2006. This evidence contradicted Yang's claim that he never considered immigrating to the United States before his mother introduced him to his future bride.

Second, the circumstances of Chang's visits to China suggested that she and Yang both understood that the purpose of the proposed marriage was to evade the immigration laws. On Chang's first visit, Chang and Yang, along with other pairs arranged by Wu, participated in a staged photo shoot and an "engagement party," so that photographs of the couple could be submitted with Yang's immigration application as documentation of the relationship. Although Chang and Yang met for the first time that very day, they complied with a photographer's direction to look "like [they] were in love" by holding hands or putting their arms around each other. Yang also told Chang that he would not live with her in the United States, but would live with a relative instead.

Third, Yang took other steps to create a record designed to evade the immigration laws. Yang sent correspondence to Chang, copied from a template provided by Wu's father, stating that Chang needed to send him "loving letters," photographs, and telephone bills to document their relationship for immigration authorities. To create an appearance of lengthy communications between the two, Chang placed occasional telephone calls to Yang, during which she set the phone down and waited about 30 minutes before hanging up. In fact, however, Yang and Chang spoke only if Yang wanted to ask Chang a question related to the immigration process. When Chang traveled to China a second time in April 2007, she and Yang practiced answers that Yang would give during a consular interview with immigration authorities. Some of the answers that Yang prepared – including that he and Chang had met on the Internet, the name of the website on which they had met, and how long they had known each other – were false, but Yang used these false answers to complete the interview successfully, and to secure a visa.

-4-

Fourth, once Yang arrived in the United States purportedly to marry Chang, the initial wedding date was postponed, and Yang left Minnesota. After the two eventually married in July 2007, Yang again left Minnesota. Yang and Chang never lived together, and they never consummated their marriage.

A defendant's knowledge and intent may be proved by circumstantial evidence, and the jury may draw reasonable inferences from the evidence about the defendant's state of mind. The circumstantial evidence described above was sufficient to justify a reasonable jury's conclusion that Yang knowingly entered into a marriage with Chang for the purpose of evading the immigration laws, and that he knowingly entered into an agreement for that purpose.

The judgment of the district court is affirmed.

_____