# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2818

_____

United States of America

*Plaintiff - Appellee*

v.

Tracy Clemons

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: March 11, 2013
Filed: July 22, 2013
[Published]

_____

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Tracy Clemons was convicted of 65 counts of mail fraud, in violation of 18 U.S.C. § 1341, for collecting proceeds from the milling of pine saw logs that he diverted from their intended mill. On appeal, Clemons challenges the sufficiency of

the evidence to support his conviction, argues that the district court[1] abused its discretion in allowing the government to introduce statements he made during a proffer interview, and argues that the district court erred in denying him a setoff against the restitution amount. We affirm.

## I. *Background*

Deltic Timber Corporation ("Deltic") contracted the harvesting of several tracts of land to a logging company, Clemons Timber, Inc. (CTI). CTI agreed to deliver pine saw logs harvested from those tracts to a mill that Deltic owned. However, Clemons, the owner and operator of CTI, instructed CTI's log-truck drivers to deliver many truckloads of the logs to a mill owned by one of Deltic's competitors, Green Bay Packaging ("Green Bay"). Clemons instructed the drivers to identify their loads as timber brokered through North Arkansas Wood (NAW). Clemons's mother owned NAW. NAW routinely sent weekly statements of its deliveries via U.S. mail to Green Bay, and Green Bay routinely responded by sending payments by U.S. mail back to NAW. NAW received payment for the truck loads of Deltic's pine saw logs, and Clemons diverted those proceeds from NAW to CTI's business account. Clemons then caused checks to be issued out of CTI's business account into his personal account.

A superseding indictment charged Clemons with 65 counts of mail fraud, in violation of 18 U.S.C. § 1341, and 116 counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Clemons maintained his innocence, and he agreed to meet with Assistant United States Attorney Tricia Harris to proffer testimony regarding where he had obtained the pine saw logs that he directed to Green Bay's mill. The interview was attended by Clemons, Clemons's attorney, Harris, Billy Black of the Arkansas Forrestry Commission, and Federal Bureau of Investigation Special Agent

---

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

Chad Coulter. Agent Coulter wrote a memorandum ("the FBI 302 memo") of Clemons's statements during the interview.

Clemons subsequently obtained new counsel, Dale Adams, who discovered from reading Agent Coulter's grand jury testimony that a proffer agreement existed. Adams requested a written copy of the proffer agreement from Harris. However, Harris found no proffer agreement in the government's file and thus did not provide one to Adams. Clemons moved to dismiss the indictment, arguing that insufficient evidence existed to convict him. The district court denied his motion. The case proceeded to trial, and Clemons testified. The government sought to cross-examine Clemons with his proffered statements as summarized in the FBI 302 memo. Adams objected, arguing that the government's use of the FBI 302 memo was inappropriate, given that the government had not provided a copy of the proffer agreement to him. Harris responded that the terms of the proffer agreement would have been the same as any other she had dealt with. Harris stated that, in her practice, a proffer interview

> would be covered by a standard proffer agreement that is entered into. . . . My understanding of the terms of it is just like any other proffer agreement; that is, if Mr. Clemons, whatever he says to us during a proffer can't be used against him, unless he testifies differently than what he told us in the proffer.

The district court found that Clemons's proffered statements would be admissible whether there was a proffer agreement or not:

> Well, if we don't have a proffer agreement, then, of course, you can use [the FBI 302 memo]. If we do have an agreement, then under the local rule, [that agreement] would have to be in writing before I could enforce it. In other words, we have a local rule that governs agreements between counsel, and it says that the agreement has to be in writing or it's not enforceable. And the reason for that is for when you have lawyers who

have different accounts of what happened or what they agreed to and one wants to enforce the agreement and the other one doesn't.

In this instance, we don't have a written agreement. . . . [W]e don't have any agreement that I can enforce with respect to how the proffer could be used, and so, consequently, I think [Harris] is entitled to ask about it.

The district court allowed the government to introduce Clemons's proffered statements both on Clemons's cross-examination and through Black's rebuttal testimony.

The case was submitted to the jury, which found Clemons guilty on all counts. Clemons moved for judgment of acquittal on all charges. The court denied his motion with respect to the 65 mail-fraud counts, but it directed the parties to brief the issue with respect to the 116 money-laundering counts. Clemons argued that the government failed to prove that the purpose of the checks that CTI issued to Clemons was to conceal the nature, source, ownership, and control of the unlawful proceeds. The district court granted Clemons's motion for judgment of acquittal with respect to the money-laundering counts. Deltic and Clemons stipulated to a total loss amount of $228,463.80, based on the fair market value of the diverted timber. Clemons argued that he was entitled to offset $41,890.00 for uncompensated services to Deltic. At sentencing, the district court determined that the Guidelines range was 37 to 46 months' imprisonment, but the court granted a downward departure to 18 months' imprisonment, to be followed by three years' supervised release. The court denied Clemons's request for a setoff and ordered him to pay restitution in the amount of $228,463.80 and a special assessment in the amount of $6,500.00.

## II. *Discussion*

On appeal, Clemons argues that insufficient evidence existed to support his conviction on the mail-fraud charges. Furthermore, he argues that the district court

abused its discretion in allowing the government to impeach him with his proffered statements and that it erred in denying him a setoff against the restitution amount.

A. *Sufficiency of the Evidence to Support Clemons's Mail-Fraud Conviction*

Clemons challenges the sufficiency of the evidence supporting his conviction on the 65 counts of mail fraud, arguing that neither he nor any entity he controlled ever used the U.S. mail to commit fraud.

> "We review *de novo* challenges to the sufficiency of the evidence." *United States v. Wells*, 706 F.3d 908, 914 (8th Cir. 2013) (citing *United States v. Espinoza*, 684 F.3d 766, 776 (8th Cir. 2012)). "We 'view the evidence in the light most favorable to the guilty verdict, granting all reasonable inferences that are supported by that evidence.'" *United States v. Van Nguyen*, 602 F.3d 886, 897 (8th Cir. 2010) (quoting *United States v. Milk*, 447 F.3d 593, 598 (8th Cir. 2006)). "We will reverse a conviction only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Wells*, 706 F.3d at 914 (quoting *United States v. Yang*, 603 F.3d 1024, 1026 (8th Cir. 2010)).

*United States v. Sullivan*, 714 F.3d 1104, 1107 (8th Cir. 2013).

> To prove mail fraud, the government b[ears] the burden of proving: (1) a scheme to defraud by means of material false representations or promises, (2) intent to defraud[,] (3) reasonable foreseeability that the mail would be used, and (4) the mail was used in furtherance of some essential step in the scheme.

*United States v. Parker*, 364 F.3d 934, 943 (8th Cir. 2004) (citing 18 U.S.C. § 1341; *United States v. Frank*, 354 F.3d 910, 916 (8th Cir. 2004)).

Clemons contends that "[t]he only 'mailing' involved was by [NAW] and Green Bay Packaging, and it was clearly undertaken in the normal course of [their] legal, day-to-day business operations." Moreover, Clemons argues that the funds that Green

Bay mailed are not within the ambit of the mail fraud statute because they were mailed after Green Bay's receipt of the fraudulently obtained pine saw logs.

> In *Pereira v. United States*, 347 U.S. 1, 74 S. Ct. 358, 98 L. Ed. 435 (1954), the mail fraud statute is discussed in some depth. The Supreme Court pointed out that it is not necessary to show that the petitioners actually mailed or transported anything themselves; it is sufficient if they caused it to be done. *Id.* at 8, 74 S. Ct. at 362–63. Further, it is not necessary that the schemes contemplate the use of the mails as an essential element. Where one does an act with the knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he "causes" the mail to be used. *Id.* at 8–9, 74 S. Ct. at 362–63.

*United States v. French*, 88 F.3d 686, 688 (8th Cir. 1996) (construing a prior version of the mail-fraud statute, 18 U.S.C. § 1341). The reasoning in *French* applies to the version of the mail-fraud statute under which Clemons was convicted. 18 U.S.C. § 1341 (2002) (stating the elements of mail fraud as including, inter alia, "knowingly caus[ing] to be delivered by mail . . . any . . . thing.") Viewing the evidence in the light most favorable to the guilty verdict, we find that it was "reasonably . . . foresee[able]" "that the use of the mails w[ould] follow in the ordinary course of business" from Clemons's diverting the pine saw logs to Green Bay's mill. *See id.* Furthermore, we find that Green Bay's mailing of checks to NAW is within the ambit of the mail fraud statute because "the mailing of the check[s] by [Green Bay] [was] incident to an essential part of the scheme"— Clemons's obtaining proceeds from the diverted pine saw logs. *See Pereira*, 347 U.S. 1, 8 (1954). Consequently, we hold that "the mail was used in furtherance of some essential step in [Clemons's] scheme." *See Parker*, 364 F.3d at 943. Sufficient evidence existed to support Clemons's conviction on the 65 counts of mail fraud.

## B. *Admissibility of Clemons's Proffered Statements*

Clemons argues that the district court erred in allowing Assistant United States Attorney Harris to introduce his proffered statements. "'We review a district court's evidentiary rulings for clear abuse of discretion, reversing only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict.'" *United States v. Summage*, 575 F.3d 864, 877 (8th Cir. 2009) (quoting *United States v. Two Shields*, 497 F.3d 789, 792 (8th Cir. 2007)). The district court found, in pertinent part: "[W]e have a local rule that governs agreements between counsel, and it says that the agreement has to be in writing or it's not enforceable. . . . In this instance, we don't have a written agreement." Indeed, Eastern District of Arkansas Local Rule 7.4, titled "Stipulations By Counsel," provides that "[t]he court will not recognize any agreement between counsel, if counsel differ as to its terms, unless the agreement has been reduced to writing."

Here, Harris argued that the proffer agreement provided that "whatever [Clemons] says to us during a proffer can't be used against him, unless he testifies differently than what he told us in the proffer." Adams, on the other hand, argued that the terms of the agreement had not been established. Thus, prosecution and defense "counsel differ[ed] as to[the] terms" of the proffer agreement. *See* Rule 7.4. The Rule provides that, in that case, "the court will not recognize [the] agreement between counsel . . . unless the agreement has been reduced to writing." *Id.* While it was undisputed at trial that a proffer agreement had been reached, neither Adams nor Harris asserted that the proffer agreement "ha[d] been reduced to writing." In fact, both attorneys denied having possession of any such writing. Adams stated that "in the government's file there is no proffer agreement, so I don't have the proffer agreement. As far as I can tell, Ms. Harris can't find one either." Harris stated, "I went back and looked in my computer files and didn't see one that I had prepared. I also did not locate one in any of my hard copies of documents in my files." The only written reference to a proffer agreement is in the first paragraph of the FBI 302 memo, which

states, "AUSA Harris discussed the proffer agreement between the USAO and Cortinez/Clemons." While the FBI 302 memo clearly refers to "the proffer agreement," it likewise provides no grounds for inferring that the agreement was "reduced to writing." *See id.*

Clemons argues for the first time on appeal that his proffer statements were made pursuant to plea negotiations and are protected by Federal Rule of Evidence 410(a)(4), which prohibits the use of statements made during plea negotiations against a criminal defendant. "We consider a newly raised argument only if it is purely legal and requires no additional factual development, or if a manifest injustice would otherwise result." *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 725 (8th Cir. 2002) (citing *Orion Fin. Corp. of S.D. v. Amer. Foods Group, Inc.*, 281 F.3d 733, 740 (8th Cir. 2002)). Clemons's argument is not purely legal because answering the question of whether the proffer interview was conducted pursuant to plea negotiations would require an analysis of the factual circumstances surrounding the interview. Furthermore, Clemons has not asserted that false or misleading evidence entered the record affecting the outcome of the trial, and we are not convinced that "a manifest injustice would otherwise result." *See id.* Thus, "[Clemons] does not persuade us that either exception applies. We therefore decline to consider the argument on appeal." *See id.* Consequently, we hold that Clemons has failed to show that the district court erred in allowing Harris to introduce Clemons's proffered statements.

## C. *Setoff Against the Restitution Amount*

Finally, Clemons argues that the district court erred in denying him a setoff of $41,890.00 for uncompensated services to Deltic against the $228,463.80 restitution award, which reflects the fair market value of the pine saw logs that Clemons diverted to Green Bay's mill. Clemons argues that from February 26, 2007, until his arrest on March 7, 2007, CTI harvested timber on Deltic's land and transported it to Deltic's mill as per the standard procedure. Clemons contends that Deltic has been enriched by refusing to pay $41,890.00 for the pine saw logs that were harvested and

transported during that time. At the sentencing hearing, the district court denied Clemons's request to adjudicate his claim against Deltic:

> I don't think that there's a provision under the Mandatory Victims Restitution Act for me to do that. I think the case law says that I can't do that, and I think logic, for a couple of reasons, says I can't do that. The closest case on point that we found is *United States v. Masek*, M-a-s-e-k, 588 F.3d 1283. It's a Tenth Circuit case in 2009.
>
> * * *
>
> [T]he transactions on which Mr. Clemons or Clemons Timber, Incorporated delivered wood to Deltic Timber per the contract would be separate transactions from those here. I don't think that we get to do [a setoff for uncompensated services]. And as a logical matter, I don't think we can because it would really require making Deltic a party and bringing them in and let them litigate the issue. I don't think the United States Attorney's in a position to represent Deltic on the issue of whether Clemons Timber has a legitimate claim against them, and that's what we'd have to do in order to determine that here. So those are my reasons for overruling the request to adjudicate that issue.

"We review the district court's factual finding of loss relating to restitution under a clearly erroneous standard and a challenge to the district court's application or construction of the Guidelines *de novo*." *United States v. Cupit*, 169 F.3d 536, 539 (8th Cir. 1999) (citations omitted). *Cupit* involved a criminal defendant who pleaded guilty to making a false statement in connection with a loan application. *Id.* at 536. The criminal defendant argued that the court should set off the restitution amount by an amount owed to him by the victim lender. *Id.* at 539. The district court refused to order the setoff, and we affirmed the court's decision not to reduce the loss amount by the amount owed to the criminal defendant on the unrelated claim. *Id.* We stated that the criminal defendant "still retains his claims against the corporation and may pursue

-9-

those claims in a separate proceeding." *Id.* at 540 n.3.[2] *Cupit* controls here. Consequently, we hold that the district court did not err in denying Clemons a setoff against the restitution amount.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

———————————————

[2]The government's brief states:

> In 2007, after Deltic discovered Clemons'[s] fraud, CTI, which is not a party in this criminal case, filed a civil suit against Deltic, Cleburne Circuit Case No. CV-2007-178-4, seeking to recover $41,890.00 for alleged deliveries of timber to Deltic for which payment was not made. In response, Deltic filed a counterclaim against CTI, and also filed third party claims against Clemons, Clemons'[s] wife, Clemons'[s] mother, and NAW. As set forth in the United States'[s] sentencing memorandum (Dkt. 83), Deltic asserted numerous defenses to the claims of CTI, including setoff and unclean hands, and also asserted claims of conversion, breach of contract, civil fraud, unjust enrichment, and trespass. . . . The civil case remains pending.

(Footnote omitted).