[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-17416
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-20579-JAL-13

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ELISABET KERESE ALVAREZ,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(April 23, 2018)

Before MARCUS, ROSENBAUM and FAY, Circuit Judges.

PER CURIAM:

Elisabet Kerese Alvarez appeals her conviction for one count of marriage fraud and one count of conspiracy to commit marriage fraud.  We affirm.

## I. BACKGROUND

In 2015, a grand jury indicted Alvarez, Rolando Mulet, Odalys Marrero, Osvaldo Lastre Duran, Manual Andres Gomez, and nine other defendants with conspiracy to commit marriage fraud, in violation of 18 U.S.C. § 371, as well as substantive offenses, including marriage fraud, in violation of 8 U.S.C. § 1325(c). Alvarez was charged with conspiracy to commit marriage fraud (Count 1) and marriage fraud (Count 6).  According to the indictment, Marrero and Mulet, the owners of Tita's Tramite & Travel ("Tita's"),[1] arranged fraudulent marriages between non-Cuban aliens and Cuban citizens for the purpose of fraudulently qualifying the non-Cuban aliens for immigration benefits, including status as lawful permanent residents in the United States.[2]  The indictment alleged that Alvarez, a Venezuelan citizen, and Duran, a Cuban citizen, entered a fraudulent marriage on April 11, 2014, in order to obtain status for Alvarez as a lawful permanent resident.  Alvarez moved to sever her case from her codefendants; after

---

[1] *See United States v. Mulet*, No. 16-16400, 2018 WL 1478029 (11th Cir. Mar. 27, 2018).

[2] Under the Cuban Adjustment Act of 1966, Pub. L. No. 89-732, 80 Stat. 1161, a Cuban citizen may adjust his status to lawful permanent resident after living in the United States for a year and one day.  The spouse of a lawful permanent resident Cuban may also adjust her status to lawful permanent resident.  *Id.*

2

the district court granted a motion to continue her trial, her case was severed and

she was tried separately.

Alvarez filed a motion to suppress statements made during two encounters

with federal agents Mildred Laboy and Roberto Valle: (1) an interview at Tita's on

July 1, 2014 ("the Tita's interview"); and (2) an interview at the Homeland

Security Investigations Office ("HSI") on July 2, 2014 ("the HSI interview").

Alvarez argued that both interviews were custodial interrogations and that the

statements made during the two interviews should be suppressed.  Alvarez

contended that she was not informed that she was free to leave, the agents became

verbally aggressive during the HSI interview, she was not given her *Miranda*

rights,[3] and she had not waived her rights.

Following a hearing and supplemental briefing, the magistrate judge issued a

report and recommendation ("R&R"), recommending that the district court deny

Alvarez's motion to suppress in large part and grant the motion to the extent that

the government sought to introduce statements made after Agent Laboy

handcuffed her at the HSI interview.  After de novo review, the district court

adopted the R&R over Alvarez's objections.

Alvarez's case proceeded to a jury trial.  At the close of evidence, Alvarez

moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

29. The district court denied the motion. Alvarez also submitted a proposed jury instruction on her good-faith defense: a modified version of Special Instruction 17. The government urged that if the court gave a good-faith instruction that it should give the pattern one in its entirety. When the district court indicated that it was inclined to give the pattern instruction in full, Alvarez withdrew her request.

After closing arguments concluded, Alvarez moved for a mistrial on grounds that the government, in its rebuttal closing argument, had attempted to shift the burden of proof to Alvarez. The district court denied the mistrial motion, noting that the government had stated its burden then pointed out that Alvarez had subpoena power in response to her closing argument. The court also observed that it had instructed the jury on the government's burden of proof and that Alvarez did not have any burden to prove her innocence, testify, or present evidence.

The jury found Alvarez guilty of Counts 1 and 6. Alvarez filed a motion for a new trial in which she again sought relief based on the government's shifting the burden of proof. The district court denied the motion, entered judgment, and sentenced her to time served.

On appeal, Alvarez argues that the district court erred by denying her motion to suppress and her motion for a judgment of acquittal based on the sufficiency of the evidence. Alvarez also argues that the district court abused its discretion by

refusing to instruct the jury regarding her good-faith defense and denying her

motions for mistrial and a new trial.

## II. DISCUSSION

### A. Motion to Suppress

Alvarez first argues that the district court erred in denying her motion to

suppress because, under the totality of the circumstances, both the Tita's and HSI

interviews were custodial interrogations, and therefore, the statements she made in

the absence of *Miranda* warnings should have been suppressed.  We apply a mixed

standard of review to a district court's denial of a motion to suppress, reviewing

the district court's factual findings for clear error and its legal determinations de

novo.  *United States v. McCullough*, 851 F.3d 1194, 1199 (11th Cir.), *cert. denied*,

137 S. Ct. 2173 (2017).  The evidence is viewed in the light most favorable to the

prevailing party.  *Id.*  Additionally, we defer to the credibility determinations of the

factfinder "unless it is contrary to the laws of nature, or is so inconsistent or

improbable on its face that no reasonable factfinder could accept it."  *United States*

*v. Holt*, 777 F.3d 1234, 1255 (11th Cir. 2015) (quoting *United States v. Ramirez-*

*Chilel*, 289 F.3d 744, 749 (11th Cir. 2002)).

The Fifth Amendment provides that "[n]o person . . . shall be compelled in

any criminal case to be a witness against himself."  U.S. Const. amend. V.  In

*Miranda*, the Supreme Court established that statements made during a custodial

interrogation are not admissible at trial unless the defendant was first advised of her rights, including the right against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444-45, 86 S. Ct. 1602, 1612 (1966). An individual is "in custody" for *Miranda* purposes where there is a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 3520 (1983) (quotation marks omitted).

Courts determine whether an individual was "in custody" based on whether, under the totality of the circumstances, an objectively reasonable person in her position would have felt that her freedom of movement was restrained to such an extent that she would not feel free to leave. *United States v. McDowell*, 250 F.3d 1354, 1362 (11th Cir. 2001). In making this determination, courts consider several factors, including whether "the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled." *United States v. Luna-Encinas*, 603 F.3d 876, 881 (11th Cir. 2010) (quoting *United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006)). This test is from the perspective of a reasonable innocent person, and "the actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant." *United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006) (quoting *United States v. Moya*, 74 F.3d 1117, 1119 (11th Cir. 1996)).

An interviewee's "status as a suspect, and the 'coercive environment' that exists in virtually every interview by a police officer of a crime suspect, [does] not automatically create a custodial situation." *United States v. Muegge*, 225 F.3d 1267, 1270 (11th Cir. 2000). While the location of the interview is not necessarily dispositive, courts are much less likely to find a custodial encounter when the interrogation occurs "in familiar or at least neutral surroundings." *Brown*, 441 F.3d at 1348 (quoting *United States v. Ritchie*, 35 F.3d 1477, 1485 (10th Cir. 1994)). An interview at a secure facility and an escort by officers also does not necessarily make a situation custodial, especially if an escort was required by the situation. *Muegge*, 225 F.3d at 1271; *see also United States v. Phillips*, 812 F.2d 1355, 1362 (11th Cir. 1987).

The district court did not err in denying Alvarez's motion to suppress because, under the totality of the circumstances, neither interview was custodial; therefore, the agents were not required to give *Miranda* warnings. *See Beheler*, 463 U.S. at 1125, 103 S. Ct. at 3520; *McDowell*, 250 F.3d at 1362. The Tita's interview occurred in a familiar location at which Alvarez voluntarily arrived, a situation we are less likely to find custodial. *See Brown*, 441 F.3d at 1348. Alvarez walked into Tita's without seeing the agents inside or being stopped, indicating that the agents were not preventing people from entering and exiting the building. Although the agents were wearing tactical gear and carrying guns, they

7

did not draw their guns during the encounter with Alvarez, touch her, physically restrain her, or otherwise behave coercively. *See Luna-Encinas*, 603 F.3d at 881.

After Alvarez greeted the agents and asked for Marrero, Agent Valle asked her to "[p]lease sit down"; Agent Laboy then came in and sat down with her. The agents explained why they were there, Alvarez agreed to answer some questions, and the 5-to-15-minute interview was calm and relaxed. Although Agent Rodney Sankar maintained his position near the entrance, there is no indication that he positioned himself there to prevent Alvarez from leaving or would have refused to let her leave if she had asked. Based on the agents' testimony, which the magistrate judge credited over Alvarez's testimony, Alvarez calmly left Tita's on her own.

While Alvarez admitted to incriminating information, she was not a target of the investigation and the agents did not know who she was before she arrived. *See Muegge*, 225 F.3d at 1270. While Alvarez was not told that she was free to leave, she also was not told that she could not leave and she never asked to leave. *See Phillips*, 812 F.2d at 1357. Under the circumstances, a reasonable innocent person would not have felt that her freedom was curtailed to the same extent as a formal arrest. *See Luna-Encinas*, 603 F.3d at 881; *Brown*, 441 F.3d at 1347.

Likewise, although more contentious, the HSI interview also was not custodial. Alvarez had the time and opportunity to decide whether she wanted to

8

speak with the agents further and consulted an attorney before driving herself to

HSI.  Although the HSI interview took place within a secured facility, an escort

was not required to leave and people were routinely allowed out of the security

gate around HSI without question.  *See Muegge*, 225 F.3d at 1271.  The agents

were casually dressed, their guns were not visible, and they took Alvarez to a

conference room close to the HSI lobby.  During the interview, the door to the

conference room was closed, but there is no indication that it was locked or that the

agents would have prevented her from leaving if she had asked to stop the

interview.  Although the interview became contentious, the only relevant statement

was made initially while the conversation was calm and then repeated as the

conversation became heated.[4]  Once the interview became contentious, the agents

terminated the interview and did not question Alvarez further.  Accordingly, the

statement was made when a reasonable person would have felt free to leave the

interview and the relevant portion of the HSI interview was not custodial.  *See*

*Beheler*, 463 U.S. at 1125, 103 S. Ct. at 3520; *McDowell*, 250 F.3d at 1362.

## B. Motion for Judgment of Acquittal

Alvarez next argues that the district court erred in denying her motion for a

judgment of acquittal based on its determination that the government had provided

---

[4] During the HSI interview, Alvarez denied the statements made during the Tita's interview; she told the agents that she had met her Cuban husband at a party and they got married because they fell in love.  Alvarez made this statement at the beginning of the interview and then continued to repeat this after she became agitated.

sufficient evidence to support convictions for conspiracy to commit marriage fraud and marriage fraud. She contends that although this court has not held that the government must prove that a defendant knew that her conduct was unlawful when proving marriage fraud, it should follow the Fourth, Sixth, Eighth, and Tenth Circuits in doing so.[5] Alvarez asserts that because the government failed to prove that she knew her conduct was unlawful, her convictions are invalid.

We review de novo a district court's denial of a motion for judgment of acquittal. *United States v. Seher*, 562 F.3d 1344, 1364 (11th Cir. 2009). When the motion challenges the sufficiency of the evidence, we review de novo the sufficiency of the evidence. *Id.* We will affirm the denial if we conclude that a reasonable factfinder could find that the evidence established guilt beyond a reasonable doubt. *Id.* We consider the evidence "with all [reasonable] inferences and credibility choices drawn in the government's favor." *United States v. Williams*, 865 F.3d 1328, 1344 (11th Cir. 2017) (quoting *United States v. Broughton*, 689 F.3d 1260, 1276-77 (11th Cir. 2012)).

Federal law prohibits "[a]ny individual . . . [from] knowingly enter[ing] into a marriage for the purpose of evading any provision of the immigration laws." 8 U.S.C. § 1325(c). To prove marriage fraud under § 1325(c), the government must

---

[5] *See United States v. Dyugaev*, 443 F. App'x 810, 812 (4th Cir. 2011); *United States v. Yang*, 603 F.3d 1024, 1026 (8th Cir. 2010); *United States v. Islam*, 418 F.3d 1125, 1128 (10th Cir. 2005); *United States v. Chowdhury*, 169 F.3d 402, 407 (6th Cir. 1999).

establish that: "(1) the defendant knowingly entered into a marriage (2) for the purpose of evading any provision of the immigration laws." *United States v. Rojas*, 718 F.3d 1317, 1320 (11th Cir. 2013). Although some circuits have required that the government also prove the defendant knew that her conduct was illegal when she entered the marriage, we have not determined whether such a showing is necessary. *Id.* at 1320 n.2.

Federal law prohibits conspiring to commit an offense against the United States or to defraud the United States. 18 U.S.C. § 371. To prove conspiracy under § 371, the government must establish: "(1) an agreement by two or more individuals to commit an offense against or defraud the United States; (2) knowing and voluntary participation; and (3) an overt act by a conspirator." *See United States v. Gonzalez*, 834 F.3d 1206, 1219 (11th Cir. 2016).

The district court did not err in denying Alvarez's motion for a judgment of acquittal because the government presented sufficient evidence to prove both charges beyond a reasonable doubt. As to marriage fraud, even assuming we required proof that Alvarez knew that her conduct was illegal, the government presented sufficient evidence to sustain the conviction. *See Rojas*, 718 F.3d at 1320 & n.2. The government presented evidence that Alvarez married Duran, a Cuban citizen, and, prior to their marriage, they discussed that the purpose of the marriage was to obtain legal status for Alvarez to remain permanently in the

11

United States.  The government also presented evidence that Alvarez and Duran did not plan to have a life together as a married couple.  Prior to their marriage, Alvarez and Duran discussed that they would need to take pictures and practice questions to make their marriage look real during the immigration interview, indicating that Alvarez knowingly entered the marriage in order to evade U.S. immigration laws.  Notably, if Alvarez believed that marrying just to obtain lawful permanent resident status was in accordance with U.S. immigration law, she would have had no reason to take fake pictures and other steps to convince immigration authorities that their marriage was real.

As to conspiracy to commit marriage fraud, the government presented sufficient evidence for a reasonable jury to find that at least two individuals agreed to participate in the marriage-fraud scheme, Alvarez was a knowing and voluntary participant, and there was an overt act by a conspirator.  *See Gonzalez*, 834 F.3d at 1219; *Rojas*, 718 F.3d at 1320; *Seher*, 562 F.3d at 1364.  First, the government presented testimony that, in addition to Alvarez and Duran agreeing to marry as part of the scheme, at least two other people agreed to be involved, and Alvarez's marriage was part of a larger marriage fraud conspiracy including at least two other people.  Alvarez had paid Marrero and Mulet to find her a Cuban husband, Mulet had married Alvarez and Duran, and Marrero had instructed them on how to make their marriage look real.  Furthermore, Manuel Gomez testified regarding his

12

fraudulent marriage to a Cuban woman that he had entered into under Marrero and Mulet's direction in order to resolve his immigration issues.

Second, as discussed above, the government presented sufficient evidence that Alvarez was a knowing and voluntary participant in the fraudulent marriage, which was part of the conspiracy. Third, the government presented evidence that an overt act was committed in furtherance of the scheme because Alvarez went through a staged marriage ceremony on April 11, 2014. Accordingly, the evidence was sufficient for a reasonable factfinder to find Alvarez guilty beyond a reasonable doubt as to both offenses. *Seher*, 562 F.3d at 1364.

## C. Jury Instructions

Alvarez argues that the district court abused its discretion by refusing to instruct the jury regarding her good-faith defense; however, she concedes that she withdrew her request for the instruction. We review a district court's refusal to give particular jury instructions for abuse of direction. *United States v. Chahla*, 752 F.3d 939, 948 (11th Cir. 2014). However, "a party may not challenge as error a ruling or other trial proceeding invited by that party." *United States v. Ross*, 131 F.3d 970, 987 (11th Cir. 1997). A party who expressly accepts a jury instruction waives her right to challenge the instruction on appeal because she has invited any error. *United States v. Gibson*, 708 F.3d 1256, 1275 (11th Cir. 2013).

Alvarez is precluded from raising this argument because she invited any error in the district court's decision to not instruct the jury regarding her good-faith defense. *See id.*; *Ross*, 131 F.3d at 987. After the district court indicated that it would give the entire pattern instruction instead of the modified instruction that Alvarez had requested, she withdrew her request. The district court stated that it would have given the pattern instruction, based on trial testimony, but was not doing so because Alvarez withdrew her request. Additionally, when given the opportunity to object after the jury was instructed, Alvarez did not raise any objections.

## D. Motions for Mistrial and a New Trial

Alvarez finally argues that the district court erred by denying her motions for mistrial and for a new trial because the prosecutor improperly shifted the burden of proof to her in his rebuttal statement. We review a district court's denial of a motion for mistrial for abuse of discretion. *United States v. Garcia*, 405 F.3d 1260, 1272 (11th Cir. 2005). Similarly, we review the denial of a motion for a new trial for abuse of discretion. *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006). We review de novo the question of prosecutorial misconduct during closing arguments. *United States v. Schmitz*, 634 F.3d 1247, 1266-67 (11th Cir. 2011). In order to find prosecutorial misconduct, (1) the comments must have been improper, and (2) the defendant's substantial rights must have been

prejudiced. *Id.* at 1267. Potential prejudice is diminished by the district court explicitly instructing the jury regarding the burden of proof. *United States v. Hernandez*, 145 F.3d 1433, 1439 (11th Cir. 1998). It is not improper for the government to comment that the defendant has the same subpoena powers as the government. *Schmitz*, 634 F.3d at 1267. Such a comment is not improper, "particularly when done in response to a defendant's argument about the prosecutor's failure to call a specific witness." *United States v. Blackman*, 66 F.3d 1572, 1578 n.7 (11th Cir. 1995). Additionally, a prosecutor can comment on the defendant's failure to counter or explain evidence at trial. *Hernandez*, 145 F.3d at 1439.

The district court did not abuse its discretion by denying Alvarez's motions for mistrial and a new trial because it correctly determined that the government did not commit prosecutorial misconduct during its rebuttal statement. The government was allowed to point out that Alvarez also had subpoena power in response to her closing statement that the government had failed to subpoena phone records or the pictures testified about at trial. Accordingly, the government's comments were not improper. *See Schmitz*, 634 F.3d at 1267; *Hernandez*, 145 F.3d at 1439; *Blackman*, 66 F.3d at 1578 n.7. Furthermore, the government stated, during its rebuttal, that it had the burden of proof, and the district court instructed the jury that Alvarez was presumed innocent and the

government must prove her guilty beyond a reasonable doubt.  Accordingly, any possible prejudice was diminished.  *See Hernandez*, 145 F.3d at 1439.

**AFFIRMED.**